## ISAAC VINCENT *vs.* JOSIAH GORHAM & Trustee.

A fund was placed in the hands of A. and B. in trust for the benefit of L. and C., and the donors of the fund, pursuant to a power originally reserved by them to make new limitations of said trust fund, afterwards directed that A. and B. should hold such part of L.'s share of the fund, as remained in their hands, in trust to be applied for the support of the children of L. in such way, and in such proportions, as A. and B. might see fit. *Held*, that the holders of the trust fund could not be charged, in the process of foreign attachment, as trustees of the husband of a daughter of L.

A trustee of a fund that was raised for the benefit of L. and C. paid to L. the greater part of her share of the principal thereof, and took from her and her husband a full release, and thereupon agreed to pay the residue of the fund, that would have belonged to L., to her children, after her decease : The donors of the fund afterwards confirmed the *doings* of the trustee, but made new limitations of the fund, inconsistent with his said agreement : *Held*, that said agreement was without consideration, and that it was not confirmed by said donors.

THE answer of Henry Codman, who was summoned as trustee of the principal defendant, was in substance as follows :

On the 27th of March 1799, the children of John Amory senior, who was then living — understanding that he had made his last will, and had therein bequeathed to Lucy Amory and Katharine Amory, children of his deceased son, William Amory, pecuniary legacies which would be less than said Lucy and Katharine's full share of said John's estate, if he should die intestate — covenanted to and with each other, and with said Lucy and Katharine, and with the executors of said John, that said Lucy and Katharine should be entitled to such further part of said John's estate as should amount to a full share thereof, in as ample a manner as though said John had devised such share to them, as representatives of said William. The following provisos were annexed to the said covenant : " Provided however, and the foregoing gift, grant and covenant is upon the conditions following, that is to say, that their said share, so granted, shall be paid by the executors of the said John Amory to Rufus G. Amory, their guardian, or to their guardian for the time being, and that the said guardian shall pay out of the profits or income thereof the yearly sum or annuity of $150 unto the mother of the said children, so long as we the subscribers shall think fit ;

Vincent *v.* Gorham & Trustee.

and in case of the death of either of said children unmarried or without issue, and before her arrival to the age of 21 years, such deceased child's share shall be and enure to the survivor of them : And in case both of the said children shall die unmarried or without issue, and before their arrival to the age of 21 years, then the whole of the said property shall revert and be distributed as the estate of our said father, John Amory. Provided further, that a majority of the subscribers shall have a right to make any other or further limitations of the principal or interest of the said property, as they shall think for the real interest and benefit of the said children."

On the 9th of March 1820, after the decease of said John Amory, his surviving children made a new agreement under seal, which, after reciting the former agreement, and the reservation therein of a right to make other or further limitations, &c. for the benefit of said children, concluded thus :

" And whereas the said property has been hitherto held by their uncle, John Amory, in trust for the said children respectively, and he has from time to time advanced to the aforesaid Lucy Amory, on her marriage with Joseph Bennett, Esquire, and at other times, not only all the interest but a considerable part of the principal of her share, and we the subscribers, being a majority of the subscribers to the aforesaid covenant, thinking it will be for the benefit and interest of said Lucy, now Lucy Haskell, and of the said Katharine, now Caroline Amory, that further limitations of the said property should be made : Now therefore we the subscribers, surviving children of John Amory, do hereby ratify and confirm all the doings and proceedings of John Amory and Rufus G. Amory, in relation to the property so as aforesaid covenanted to be given to the children aforesaid, so far as we have any lawful right so to do ; and we do make and declare the limitations following in regard to the property aforesaid : That the principal sum now remaining, belonging to the said Lucy Haskell and Caroline Amory respectively, shall continue to be held by the said John Amory, their uncle, and by Rufus G. Amory, their uncle, or by one of them, and by the survivor of them, in trust that they will pay the interest

Vincent *v.* Gorham & Trustee.

of the sum belonging to each of the said children of William Amory to the said children respectively, whether married or single, during their several and respective lives, taking their several sole and separate receipts therefor ; and upon the decease of the said Lucy Haskell, in further trust that they will apply the whole or such part of the interest of the property still remaining, belonging to her, or covenanted to be retained by her as aforesaid, towards the support of the children of said Lucy Haskell, in· such way and manner, and in such proportions, as they the said John Amory and Rufus G. Amory, or either of them, or the survivor of them, may see fit ; and on the marriage or arrival at full age of either of said Lucy's children, or before, if they see fit, in trust that they may advance a part or the whole of such child's share of the principal, and on the arrival of such child or children at the age of 21 years ; or on an appointment of guardians whom the said John and Rufus G. Amory may approve, in further trust that they may pay over the principal either to such children of full age or to such guardians so by them approved, to be equally divided among the children of said Lucy : And upon the decease of said Caroline, in trust that the principal of her share, and such part of the income as she shall not have expended, shall be paid to such person or persons as she, by any instrument in writing, purporting to be her last will and testament, shall direct, appoint or request that the same should go, and be divided or bequeathed ; and on the failure of said Caroline to make such will or disposition, then in trust that the said property shall go to and be divided among the heirs at law of said Caroline, other than the widow of William Amory, for whom an adequate provision has already been made out of the estate of our father, John Amory.

" Provided however that a majority of the subscribers may make from time to time such alterations, changes, other and further limitations of these trusts, and of the direction of said property, as they may deem most for the interest of said Lucy and Caroline, or their children or heirs."

Although, in the said agreements, Rufus G. Amory is designated as one of the trustees of said fund, yet in fact John

Vincent *v.* Gorham & Trustee.

Amory Jr. was, from the time of its creation, the sole acting trustee thereof, until his death in 1832. The whole of the sum which, by the above agreements, was agreed to be contributed for the formation of said trust fund, has been accounted for with the said Lucy and Caroline, or their legal representatives, and paid over to them, except the sum of $ 3333 33, which was reserved to pay to their mother the sum of $ 150, (afterwards raised to $ 200,) per annum, as mentioned in the foregoing agreements.

The said Lucy Amory intermarried with Joseph Bennett, and, after his decease, with Jesse Haskell, and died intestate, leaving issue by said Bennett, one son, and by said Haskell, three sons and one daughter, viz. Charles, William and Edward Haskell, and Caroline A. who is now the wife of the principal defendant in this suit.

The said Katharine (afterwards Caroline) Amory died unmarried, and testate, appointing the abovementioned Charles, William and Edward Haskell her residuary legatees, and the said Codman, who is summoned as trustee in this suit, executor of her last will, which trust he accepted and has acted upon, and has accounted for all the property which came into his hands under said will, except the interest of said Caroline in said fund of $ 3333·33.

In 1832, John Amory Jr. died, without making any special provision for the continuance of the trust which he had exercised under the foregoing agreements, but leaving said Codman the executor of his will, who has received, under the same, a larger sum than $ 3333·33, after payment of said Amory's debts, legacies and charges of administration.

Said John Amory Jr. during his lifetime, and said Codman since his decease, duly paid to the mother of said Lucy and Caroline the said annuity of $ 200, up to the time of her decease, which was in the year 1838 ; since which time, no payment of interest or principal has been made by said Codman on account of said sum of $ 3333·33.

The oldest son of the marriage of said Lucy with Jesse Haskell died in the year 1837 or 1838, and Benjamin Lincoln, Esq

Vincent v. Gorham & Trustee.

administered on his estate. Said Codman has paid to said administrator all that was due to the intestate on account of said trust funds, except his share of said sum of $ 3333·33.

In December 1810, said Lucy and her husband, Joseph Bennett, gave a release to said John Amory and Rufus G. Amory, her brothers, discharging them from all further liability, as executors of the will of their father, and as trustees of the donation or trust fund aforesaid, except the said sum of $ 3333·33 ; and the said John Amory, on the 8th of said December, executed the following instrument :

" This may certify that there is now in my hands the sum of three thousand three hundred and thirty-three dollars thirty-three cents, arising from the estate of Lucy and Caroline Amory, and appropriated as a fund for the annuity of two hundred dollars per annum, payable to their mother, during her life , at her decease to be divided between said Lucy and Caroline or then heirs, according to the trust as specified in my settlement with Joseph Bennett and Lucy his wife, this day ; this being the certificate or obligation referred to in my covenant : The same sum will bear interest, commencing on the first day of January next, say first January 1811. It being understood that at the death of the mother of said Lucy and Caroline, the interest only of the above sum shall be paid to them during their respective lives, and at their decease, the principal sum to be applied to the use of their respective heirs, and according to their last will. John Amory."

*E. Ames*, for the plaintiff.

*Parsons & Codman*, for the trustee.

WILDE, J. By the facts disclosed by the trustee, it appears that, at the time of the service of the writ, he had in his hands and possession a certain trust fund, which he held in part for the use and benefit of the wife of the principal defendant ; and the question is, whether by law he is bound to pay the same to the husband. In 1799, the children of John Amory, deceased, entered into a covenant and agreement for the purpose of raising a fund, for the benefit and comfort of Lucy Amory and Katharine (afterwards Caroline) Amory, the daughters of William

Amory, a deceased brother. This was a liberal provision, and was gratuitously made by the covenantors ; but no provision was then made for the children of the said daughters, in the event of their marrying and dying leaving issue. It was however provided, that a majority of the covenantors might thereafter make any further limitations of said trust fund, as they should think right.

Accordingly, in 1820, the surviving children of the said John Amory did enter into another covenant and agreement, in pursuance of the power reserved in their first covenant and agreement, whereby the limitations of said trust fund were extended to the children of the said Lucy Amory, who was then married to Jesse Haskell, and had been before married to Joseph Bennett. She has since deceased, leaving several children, of whom the wife of the principal defendant is one. And the question, as to the liability of the trustee, depends entirely, as we think, upon the terms of this latter limitation of the trust fund, which is now in the hands of the trustee, as the executor of the last will and testament of John Amory Jr. one of the original trustees of said fund.

The plaintiff's counsel objects to the validity of the new trusts ; but there is clearly no ground for the objection. If there had been no power reserved by the first agreement to create new trusts, there might be some doubt, perhaps ; though even in such case it would be difficult to support the objection ; the first trust being voluntary. In *Wallwyn* v. *Coutts*, 3 Meriv. 707, it was decided, that where a debtor executed a trust deed for payment of creditors, no creditor being a party, nor made by agreement, and without consideration on the part of any creditor, the debtor had power afterwards, by another deed, to vary said trusts in the first deed. See also 2 Story on Eq. § 1196. But there is no such question in the present case, and we give no opinion on this point. But we think it very clear, that as there was power reserved, in the first agreement, to create new trusts, the power was well executed by the second agreement, and that the new trusts thereby declared are valid. By that agreement, it was provided that on the death of the

said Lucy Haskell, the trustees should apply her part of said fund towards the support of her children, in such way and manner, and in such proportions, as the trustees or either of them should see fit. This clearly authorized the trustees to apply the share of the wife of the principal debtor to her separate use; and neither her husband nor his creditors have any right to interpose and to control the discretion of the trustee. And the trustee has the further power to determine the proportion to which she may be entitled. By which it appears, that the trustee has a very large discretion in the application and distribution of the trust fund; and the court has no right to limit this discretion.

But the plaintiff's counsel contends, that John Amory Jr. the trustee, by an agreement or certificate in writing, dated December 8th 1810, undertook and promised to apply the principal of the trust fund, on the death of the said Lucy and Caroline, to the use of their respective heirs, and according to their last wills; and that this promise was ratified by the agreement of 1820. But this agreement only ratifies what the trustees had done, but not what was promised to be done; for as to the disposition of the trust fund, after the deaths of the said Lucy and Caroline, a new provision is made, and that provision is inconsistent with the engagement of John Amory Jr., as construed by the plaintiff's counsel. And this new provision controls the trustee's former engagement; for he became bound to execute the new trusts. And besides, there was no consideration for the trustee's promise, and it was not binding. This, therefore, as well as the other ground on which the plaintiff founds his claim, wholly fails, and the trustee is entitled to be discharged.